**CLAYTON CENTER ASSOCIATES, a Missouri Limited Partnership, by The CENTER COMPANY, its General Partner, Appellee,**

v.

**SCHINDLER HAUGHTON ELEVATOR CORPORATION, Appellant.**

No. 85–1305.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1985.

Decided Aug. 27, 1985.

---

**3.** The medical record indicates that Jennings is allergic to smoke, animals, ragweed, birds, and cheese.

Kemper R. Coffelt, St. Louis, Mo., for appellant.

W. Stanley Walch, St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

This breach of contract action is before this Court for the second time. Clayton Center Associates (Clayton Center) sued Schindler Haughton Elevator Corporation (Schindler) for breach of a contract to maintain the elevators in the Chromalloy Plaza Building, which Clayton Center owns. In *Clayton Center Associates v. Schindler Haughton Elevator Corp.*, 731 F.2d 536 (8th Cir.1984), we reversed the judgment of the district court granting a directed verdict to the defendant, Schindler, and remanded for a new trial. That opinion set forth the factual background of this dispute, *see* 731 F.2d at 538–39, which need not be repeated here. At the conclusion of the second trial, the jury awarded $170,034 in damages to Clayton Center. Schindler appeals a second time. We affirm.

Schindler argues that the district court erred in admitting the deposition testimony of Leland Glaser relating to the measure of damages. In our earlier opinion, we specified the methods which Clayton Center could use to establish its damages due to Schindler's breach of the maintenance contract:

On remand, Clayton Center will have the opportunity to specify the problems

caused by Schindler's neglect, and to specify the costs of remedying these problems. From this record, we conclude that Pankey's expert testimony and his report from the February 1981 investigation are admissible to establish his diagnosis of the elevator system, and the time required to perform the repairs necessitated by Schindler's breach. Or, Clayton Center may specify its costs of necessary repairs through Glaser's testimony with careful and particular reference to the Miller invoices, while subtracting his estimate for routine maintenance work unrecoverable against Schindler.

731 F.2d at 542.

Clayton Center chose the second method, offering Glaser's testimony by deposition in conjunction with the Miller invoices. Glaser stated that he had carefully reviewed all of the invoices for work performed by Miller Elevator Company during the relevant period, had segregated out work which was not traceable to Schindler's breach, and had determined that sixty-one invoices documented either normal maintenance or repair work to bring the elevator system back to normal standards. These sixty-one invoices totaled $191,747. Glaser then stated that in his opinion, routine maintenance work unrecoverable against Schindler (which is the amount required to maintain the elevators under normal conditions), would cost no more than $21,713 for the seven-month period in question. Subtracting this sum from the total for the sixty-one invoices left $170,034, as the total costs related to Schindler's breach, according to Glaser. This is the sum the jury awarded to Clayton Center.

■ Schindler has essentially two objections to Glaser's testimony. First, it argues that Glaser did not make careful and particular reference to the Miller invoices, as we required in our prior opinion. Schindler maintains that Glaser should have testified with respect to one invoice at a time, explaining why the particular work was required. Although it may have been pref-

erable for Clayton Center to proceed in this manner, we hold that Glaser's expert testimony sufficiently established that the sixty-one invoices were for either routine maintenance or for repair work necessary to restore the elevator system to normal condition. The district court did not err in permitting Clayton Center to proceed in this manner.

■ Schindler's second objection to Glaser's testimony is that the sixty-one invoices included hours for performing "maintenance" as opposed to "repair" work, and that only the latter is properly recoverable against Schindler. In our prior opinion, we noted that:

Clayton Center steadfastly insisted that despite its best effort, it could not separate "maintenance" from "repairs" on the face of these invoices or any back-up documents. The problem here is compounded because as a practical matter many "repairs" were essentially the performance of neglected maintenance work, and thus would not be discernible as corrective work on the invoices.

731 F.2d at 541.

We hold that Glaser's expert testimony concerning his estimate of routine maintenance for the elevator system during the relevant period was a proper means to segregate the unrecoverable maintenance work from the invoices. It is also noteworthy that Schindler had the opportunity on remand to introduce its own expert testimony concerning whether some expenses claimed in the Miller invoices were for items outside of the maintenance contract, but did not do so. We conclude that the evidence before the jury sufficiently supports the damage award.

■ Schindler also contends that the district court erred in admitting the deposition testimony of George Long, the Chromalloy Plaza building manager, relating to an elevator maintenance logbook. Schindler argues that Clayton Center did not offer sufficient foundation for the admission of the

logbook under the business records exception to the hearsay rule or the Missouri Uniform Business Records as Evidence Law, Mo.Rev.Stat. § 490.660–.690 (1969). We hold that the offer was sufficient under Fed.R.Evid. 803(6).[1] Although the entries in the logbook constitute hearsay, the logbook was kept in the regular conduct of business and there were no circumstances concerning its preparation indicating a lack of trustworthiness.

Finally, Schindler argues that the district court erred by improperly submitting Clayton Center's converse instruction to the jury. The parties agreed that instructions to the jury on the substantive law would be governed by the Missouri Approved Instructions. Under Missouri Supreme Court Rule 70.02(f), a converse instruction may be given which authorizes a verdict for a party upon the finding of the converse of any fact or element essential to the verdict-directing instruction for the opposing party. Schindler complains that the converse instruction for Clayton Center was not in substantially the same language as Schindler's verdict-directing instruction. The difference in language is that the latter specified that the jury must find for Schindler if it found that Clayton Center did not permit Schindler to perform maintenance services under the contract. Clayton Center's converse instruction read that the jury must find for Schindler on Schindler's counterclaim unless it found that Clayton Center *had good cause* to terminate the maintenance contract. We hold that the district court did not err in permitting Clayton Center's converse instruction; while one instruction is more precise than the other, there is no significant substantive difference between them.

Accordingly, the judgment of the district court is affirmed.

---

**1.** Although in practical terms, there is little difference between the Missouri Uniform Business Records as Evidence Law and Fed.R.Evid. 803(6), resolution of this issue is governed by the Federal Rules of Evidence. *See, e.g., War-*

*ner v. Transamerica Insurance Co.,* 739 F.2d 1347, 1351 n. 6 (8th Cir.1984) (in general, issues of admissibility of evidence in diversity cases are questions of federal law).